**SIGNED this 30th day of January, 2017**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER

In re:
David Mark Poole                                            No. 4:16-bk-12638-SDR
Mary Louise Poole                                           Chapter 13
    Debtors;

MEMORANDUM

The court has before it an objection to confirmation of the chapter 13 plan filed by creditor First National Bank of Middle Tennessee ("FNB"). The basis for the objection is that Debtors' plan impermissibly modifies the rights of FNB by proposing to bifurcate a single mortgage securing three notes into secured and unsecured claims. The Debtors counter that their plan meets the requirements of confirmation because FNB holds multiple claims, two of which are wholly unsecured and therefore subject to modification under 11 U.S.C. § 1325(b)(2). The court must determine which characterization of the parties' lending relationship is correct under

1

the circumstances of this case.

### I. Jurisdiction

The court has jurisdiction under 28 U.S.C. § 1334 and 157(b)(2)(K) & (L) to hear and determine this matter.

### II. Facts

The relevant facts are not in dispute.

Debtors own real property, commonly known as 104 Henegar Street, McMinnville, TN 37110, which is their principal residence. (*See* Doc. no. 37, Reply of First National Bank in Support of its Objection to Confirmation of the Debtors' Plan 1.) Solely for the purposes of the court's consideration of this objection, the parties have stipulated that the value of the property is less than $44,000.

FNB made three loans to the Debtors. At the time of the chapter 13 filing, FNB filed a proof of claim for a total debt of $57,796.14. (Proof of Claim 2) Based on FNB's proof of claim filed in the case, the three loans are more specifically described as follows:

(a) loan number 7623 ("Note One") is evidenced by promissory note dated April 26, 2005, in the original principal amount of $61,232.08. It was secured by a Deed of Trust on the Debtors residence in Warren County, Tennessee. The Deed of Trust was recorded on April 29, 2005, in Book 126, Page 649-653 in the Office of the Register of Warren County, Tennessee. On June 19, 2015, the Debtors executed a Change in Terms Agreement related to Note One which reflected the current principal amount to be $43,535.97. The loan accrues interest at the rate of 4.41% per annum. The maturity date of the original note is not stated in the claim but the Change in Terms Agreement states that the maturity date is now August 19, 2020. Note One's current balance is $44,751.92. The Deed of Trust was also modified by an Extension and Modification

Agreement dated June 19, 2015, which is discussed in more detail below.

    (b) loan number 1002 ("Note Two") is evidenced by a promissory note dated June 19, 2015, in the original principal amount of $5,723.80 with an interest rate of 4.41% per annum, and a maturity date of June 24, 2020. It has a balance of $6,243.05. (Proof of Claim 2, Ex. B.) The note states that the loan is secured by the collateral described "in the security instrument listed herein: a Mortgage or Deed of Trust to a trustee in favor of Lender on real property located in Warren County, State of Tennessee." (Proof of Claim 2, Ex. B.)  Note Two states that the Deed of Trust is filed with the Register of Deeds Office, Book 128, Page 649.

    (c) loan number 1054 ("Note Three") is evidenced by promissory note dated June 19, 2015, in the original principal amount of $6,431.56 with an interest rate of 4.41% per annum, and a maturity date of June 24, 2020. It has a balance of $6,801.17. Note Three states that the loan is secured "by the collateral described in the security instrument listed herein: a Mortgage or Deed of Trust to a trustee in favor of Lender on real property located in Warren County, State of Tennessee." (Proof of Claim 2, Ex. B.)  It also states that the Deed of Trust is filed with the Register of Deeds Office, Book 128, Page 649.

    The Deed of Trust reflects that it is given to secure certain obligations. It refers specifically to the obligation due under Note One under the heading "Present Indebtedness." It also states under a heading "Open-End Mortgage Clause" that:

> In addition to the above-described indebtedness, this Deed of Trust shall and does by these presents, secure: (1) any and all existing indebtedness or other obligations of the Borrowers, or either of them, now held by Lender, and all extensions and renewals thereof regardless of amount or maturity included the above described indebtedness, and (2) any and all future indebtedness or other obligations regardless of amount or maturity which may hereafter be created by the Borrowers, or either of them, and be held by Lender, together with any and all extensions and renewals thereof regardless of amount or maturity, with a period of twenty (20 ) years from date up to an amount not exceeding

> $61,232.08, whether said indebtedness or other obligation is evidenced by note or notes, draft, check, guaranty or otherwise.

(Proof of Claim 2, Ex. C.)

In the event of a default, the Deed of Trust authorizes the trustee to sell the property and creates a priority scheme for the application of the proceeds to the debtor, calling for the payment of expenses and the trustee first, then to the debt described as the "Present Indebtedness," and then to all other debts including those obligations referred to under the "Open End Mortgage Clause." There is no priority assigned to the other obligations referred to under the "Open End Mortgage Clause. (Proof of Claim 2, Ex. C.)

The Modification and Extension Agreement to the Deed of Trust executed on June 19, 2015, provided that the Debtors acknowledge that the amount that they were loaned was $61,282.08 on April 26, 2005 and that the debt was secured by the same Deed of Trust discussed above. The Modification extended the statute of limitations for enforcement of the Deed of Trust by ten years and changed the description of the "Present Indebtedness" to the balance owed on Note One at time of the execution of Change in Terms Agreement. It also extended the period for including future indebtedness in the paragraph under the heading Open End Mortgage. No other provision of the Deed of Trust was modified. (Proof of Claim 2, Ex. D.)

On June 24, 2016, the Debtors filed a chapter 13 bankruptcy case. (Doc. no. 1.) The Debtors' chapter 13 plan proposes to pay $800 a month for 48 months plus any federal tax refunds received by the Debtors after confirmation less all applicable tax credits. (Doc. No. 2.) The applicable commitment period for these Debtors is 36 months. The plan apparently exceeds 36 months because the Debtors do not have sufficient income to cure the arrearage within that period of time. Under the heading "Long-Term Mortgages" the Debtors are proposing a $80 a month payment toward FNB's arrearage of $3800.00 and a maintenance payment of $516.00

through the plan for Note One. (Doc. no. 2.) The plan provides for pro rata treatment of unsecured creditors. The plan treats Notes Two and Three as unsecured debts. (*Id*.) Over the course of the plan there is approximately $9600 available for administrative creditors, priority and unsecured creditors. There Debtors' attorney is seeking an additional $2000 of the $9600. Based on the claims filed in the case, the remaining $7600 will not pay all the creditors in full, including the claims of FNB for Notes Two and Three. FNB asserts Notes Two and Three are secured by the Deed of Trust on the Debtors' residence and may not be modified under 11 U.S.C. § 1322(b)(2).

### III. Analysis

The issue in this case turns on whether FNB holds one or three liens on the Debtors' principal residence. The definitions of the terms used in the relevant code sections are important to the analysis of this question. The Bankruptcy Code defines lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101 (37). A "security interest" means a "lien created by an agreement." *Id.* at (51). The right to payment of the debt or the right to performance of the obligation secured by the lien is the "claim." *Id.* at (5). In this case there are three notes, each of which creates an obligation for the Debtors to pay FNB specific amounts. Note One is accompanied by a security agreement in the form of the Deed of Trust which grants a security interest in the residence and thereby creates a charge against the property for the amount of that mortgage loan.

Notes Two and Three were executed separately for additional amounts and each contains an acknowledgment that the note is secured by the residence described in the Deed of Trust. The Deed of Trust contains a provision under the Open End Mortgage heading that a future indebtedness will also be secured by the residence. Each time the debtors created an obligation to

5

FNB a claim arose; and because of the future indebtedness clause in the Deed of Trust, an additional right to charge the property to secure the payment of the additional debt arose. This reasoning leads the court to conclude that there are three liens.

Having determined that there are three claims and three liens, the court must next determine whether those claims are secured or unsecured. The Bankruptcy Code states that

> "an allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."

11 U.S.C. § 506(a)(1). Chapter 13 provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). These two sections operate in tandem. In order for a creditor holding a security interest against real property that is the debtor's principal residence to be protected under § 1322(b)(2), the creditor must hold a secured claim as defined in § 506(a)(1). In order for a creditor to hold a secured claim, the property of the estate that serves as that claim's collateral must have enough worth to give the creditor's security interest some economic value. *Lane v. W. Interstate Bancorp (in Re Lane)*, 280 F.3d 663, 664 (6th Cir. 2002). For purposes of this hearing, the parties have agreed that the property's value does not exceed the amount owed on Note One. Therefore, Notes Two and Three are unsecured.

FNB argues that the court should reach a different conclusion because there is only one mortgage document. FNB contends that there is only one lien against the Debtors' residence; and because that lien has economic value, it may not be bifurcated. Under that theory, the issuance of separate notes is immaterial, and the existence of one security document is paramount. In

support of this position, FNB relies heavily on the Supreme Court's prohibition against bifurcation of a mortgage claim in *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106 (1993) and the Sixth Circuit Court of Appeals case *Lane v. W. Interstate Bancorp (in Re Lane*, 280 F.3d 663 (6th Cir. 2002) related to §§ 1322(b)(2) and 506(a)(1).

Neither of the holdings in these cases precludes a determination that three liens exist. First, in *Nobelman v. American Savings Bank*, the Supreme Court found that a debtor may not bifurcate a claim secured by a lien on his principal residence into secured and unsecured portions. 508 U.S. 324, 113 S. Ct. 2106 (1993).  Then in *Lane v. W. Interstate Bancorp (In re Lane)*, the Sixth Circuit held that *Nobelman* does not prevent a debtor from stripping off a second lien where the equity in the property is completely exhausted up by the first amount of the first lien. 280 F.3d 663 (6th Cir. 2002).  In effect, the rule for modifying mortgages on a debtor's principal residence can be stated simply: A debt secured by the debtor's principal residence may be modified if the mortgage holder's security interest is valueless.  *See id.* at 668.

However, in neither of the above cases were the courts faced with a factual situation similar to the one in this case.  In *Nobelman*, the Supreme Court had a debtor who had one note holder secured by lien created by one mortgage instrument. In *Lane*, the Sixth Circuit had a debtor with two different note holders, each secured by a lien created by its own mortgage instrument.  Here, the Debtor has multiple notes with the same creditor, secured by liens all contained in one deed of trust that prioritizes the payments of the obligations.

In addressing FNB's argument, the court finds the reasoning in *Nobelman* regarding the importance of a "unitary note" to be particularly enlightening:

> Petitioners propose to reduce the outstanding mortgage principal to the fair market value of the collateral, and, at the same time, they insist that they can do so without modifying the bank's rights "as to interest rates, payment amounts, and [other] contract terms." That appears to be impossible. **The bank's contractual**

7

> **rights are contained in a unitary note that applies at once to the bank's overall claim, including both the secured and unsecured components. Petitioners cannot modify the payment and interest terms for the unsecured component, as they propose to do, without also modifying the terms of the secured component**. Thus, to preserve the interest rate and the amount of each monthly payment specified in the note after having reduced the principal to $23,500, the plan would also have to reduce the term of the note dramatically. That would be a significant modification of a contractual right.

*Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 331, 113 S. Ct. 2106 (1993) (internal citations omitted) (emphasis added). While not explicit, the highlighted sentences seem to indicate that the Supreme Court might have gone the other way had the bank's contractual rights been contained in multiple notes, because it would have then been possible to modify the terms of the unsecured note without affecting the secured note. The court is convinced that this is the case and that the natural conclusion to this line of reasoning is that it is the payment obligation and not the security instrument that defines the claim.

The court has found one situation in which the Deed of Trust is be considered to be the claim. In *Johnson v. Home State Bank*, a debtor attempted to include a mortgage in a chapter 13 even though his personal liability on the note had been discharged in a previous chapter 7. 501 U.S. 78, 80-81, 111 S. Ct. 2150, 2152 (1991). The Supreme Court announced that "a mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5)" when the debtor files a subsequent chapter 13. *Id.* at 84. This would seem to indicate that a mortgage instrument can meet the definition of claim in the Bankruptcy Code; however, the Court continued in its analysis, stating that "a [prior] bankruptcy discharge extinguishes only **one mode of enforcing a claim** – namely, an action against the debtor *in personam* – while leaving intact another – namely, an action against the debtor *in rem*." *Id.* (emphasis added). This reasoning associates the claim not with the mortgage instrument itself but with the underlining debt obligation. The mortgage was a claim not because the mortgage instrument met the

8

definition of claim but because it provided a means for a creditor to enforce the debt obligation that continued to exist in an amount up to the value of the property of the debtor. The actual right to payment arose from the original note.

The only remaining issue for the court to consider is whether there is a priority to the liens or if they all share pro rata. In a case with multiple notes with the same execution date and the same date for the perfection of the security interest, it might be impossible to tell which debt is the senior debt. While a debtor might want to pick and choose the order of priority in such a way as to maximize his or her ability to modify the terms of the debt, a creditor would have an equally strong argument that it should be allowed to marshal its debt obligations in such a way as to prohibit modification. Fortunately, the parties have solved that problem for the court because they contractually agreed on the order of the application of proceeds in the Deed of Trust. The Deed of Trust clearly makes payment of the "Present Indebtedness" (Note One) senior to the "Open End Mortgage" indebtedness (Notes Two and Three). (Proof of Claim 2, Ex. C.) Based on the priority in the Deed of Trust, Note One for $44,751.92 exhausts the stipulated value of $44,000. There would be no proceeds available from a foreclosure sale to satisfy Notes Two and Three, and therefore, the liens securing them have no value. There being no economic value to the liens securing Notes Two and Three, they are unsecured claims which may be modified without altering the contractual rights the creditor has with respect to Note One.

**III. Conclusion**

Under the current stipulation of value, the Debtors may modify the terms of Notes Two and Three. The court denies the objection of FNB to the plan based on its contention that modification is prohibited. The court will proceed with the valuation hearing. Should the court find that the value is more than $44,000, the Debtors must be prepared to prove the priority of

Notes Two and Three if they still seek to treat either note as an unsecured claim. The court will hold an evidentiary hearing on the value of the residential property to determine whether the plan properly provides for the claims based on Notes Two and Three.

      A separate order will enter.

###